United States District Court
For the Northern District of California

1
2
3
4
5
6
7                                    NOT FOR CITATION

8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11   JACOB METTERS,                        No. C10-02532 HRL

12              Plaintiff,            **ORDER GRANTING IN PART AND
                                      DENYING IN PART PLAINTIFF'S**
13     v.                             **MOTION FOR SUMMARY JUDGMENT
                                      AND GRANTING IN PART AND**
14   MICHAEL J. ASTRUE,               **DENYING IN PART DEFENDANT'S
                                      MOTION FOR SUMMARY JUDGMENT**
15              Defendant.
                                      **[Re: Docket Nos. 18, 19]**
16   _____/

17

18         Plaintiff Jacob Metters appeals a final decision by the Commissioner of Social Security

19   denying his application for supplemental security income.  Presently before the court are the

20   parties' cross-motions for summary judgment.  The matter was submitted without oral

21   argument.  Upon consideration of the papers filed by the parties, and for the reasons set forth

22   below, plaintiff's motion for summary judgment is granted in part and denied in part,

23   defendant's cross-motion for summary judgment is granted in part and denied in part, and the

24   case is remanded for reconsideration consistent with this opinion.[1]

25                                    BACKGROUND

26         Plaintiff was born in 1949 and was 60 years old at the time the Administrative Law

27   Judge ("ALJ") rendered the decision under consideration here.  He completed two years of

28

_____

[1]      All parties have expressly consented that all proceedings in this matter may be
heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); FED. R. CIV. P. 73.

**United States District Court**
For the Northern District of California

1   college and last worked in 2002 as a warehouse worker for a plumbing company.  He injured

2   his right leg on that job when he slipped off a ladder while carrying a sink.  He subsequently

3   had two knee surgeries and one on his ankle.

4        In addition, from approximately the end of April 2007 to the end of May 2007, Metters

5   was hospitalized and had surgery for small bowel obstruction.  Metters was then released and

6   was soon able to return to a conventional diet.  Nevertheless, he claims that his activities of

7   daily living have been severely curtailed by the combination of his gastro-intestinal issues and

8   leg injuries.

9        On June 5, 2007, Metters filed an application for supplemental security income,

10   claiming disability beginning on April 15, 2007 due to right leg pain, high blood pressure, acid

11   reflux, and a blocked intestine.  The application was denied initially and upon reconsideration,

12   and plaintiff requested a hearing before an ALJ.

13        The ALJ subsequently issued a decision concluding that Metters is not disabled under

14   the Social Security Act.  He found that plaintiff had not engaged in substantial gainful activity

15   since June 5, 2007 and that he has the following "severe" impairments:  adhesions, status post

16   bowel obstruction, venous insufficiency, and status post right ankle surgery for fracture.  (AR

17   11).  However, he concluded that plaintiff did not have an impairment listed in or medically

18   equal to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.925 and §

19   416.926).  The ALJ further found that plaintiff has the residual functional capacity ("RFC") to

20   perform the full range of medium work as defined in 20 C.F.R. § 416.967(c) and that he is

21   capable of performing past relevant work as a warehouse worker.  (AR 14-17).

22        The Appeals Council denied plaintiff's request for review, and the ALJ's decision

23   became the final decision of the Commissioner.  Plaintiff now seeks judicial review of that

24   decision.

25                                    LEGAL STANDARD

26   A.   Standard of Review

27        Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the

28   Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only

2

**United States District Court**
For the Northern District of California

1   if it is not supported by substantial evidence or if it is based upon the application of improper

2   legal standards.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999);

3   Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial

4   evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant

5   evidence that a reasonable mind might accept as adequate to support the conclusion."

6   Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

7   When determining whether substantial evidence exists to support the Commissioner's decision,

8   the court examines the administrative record as a whole, considering adverse as well as

9   supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

10  Cir. 1989).  Where evidence exists to support more than one rational interpretation, the court

11  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Drouin, 966 F.2d at

12  1258.

13  B.      Standard for Determining Disability

14          The Social Security Act (Act) defines disability as the "inability to engage in any

15  substantial gainful activity by reason of any medically determinable physical or mental

16  impairment which can be expected to result in death or which has lasted or can be expected to

17  last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).

18  Additionally, the impairment must be so severe that a claimant is unable to do previous work,

19  and cannot "engage in any other kind of substantial gainful work which exists in the national

20  economy," considering the claimant's age, education, and work experience.  42 U.S.C. §

21  423(d)(2)(A).

22          In determining whether a claimant has a disability within the meaning of the Act, an

23  ALJ follows a five-step analysis.  See 20 C.F.R. § 416.920.

24          1.      At step one, the ALJ determines whether the claimant is engaged in "substantial

25                  gainful activity."  20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If

26                  not, the analysis proceeds to step 2.

27          2.      At step two, the ALJ must assess whether the claimant suffers from a severe

28                  "impairment or combination of impairments which significantly limits [the

3

1    claimant's] physical or mental ability to do basic work activities." <u>Id.</u> at §

2    416.920(c).  If not, the claimant is not disabled.  If so, the evaluation proceeds to

3    step three.

4    3.    At step three, the ALJ determines whether the claimant's impairments or

5          combination of impairments meets or medically equals the requirements of the

6          Listing of Impairments.  20 C.F.R. § 416.920(d).  If so, the claimant is disabled.

7          If not, the analysis proceeds to step four.

8    4.    At step four, the ALJ determines whether the claimant has the RFC to perform

9          past work despite his limitations.  20 C.F.R. § 416.920(e), (f).  If the claimant

10         can still perform past work, then he is not disabled.  If not, then the evaluation

11         proceeds to step five.

12   5.    At the fifth and final step, the ALJ must determine whether the claimant can

13         perform other substantial gainful work available in the economy, considering the

14         claimant's RFC, age, education, and work experience.  20 C.F.R. § 416.920(g).

15         If so, the claimant is not disabled.

16   The claimant bears the burden of proof at steps one through four; the Commissioner has the

17   burden at step five.  <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001).

18                                          DISCUSSION

19         Plaintiff contends that the ALJ erred by (1) making an adverse credibility determination

20   that is not supported by substantial evidence; (2) failing to explain the vocational expert's

21   deviation from the Dictionary of Occupational Titles; and (3) failing to fully develop the record.

22   Defendant asserts that the ALJ's decision is supported by substantial evidence in the record and

23   is free of legal error.

24   A.    <u>The ALJ's Adverse Credibility Determination</u>

25         The ALJ concluded that plaintiff has the RFC to perform the full range of medium work.

26   In so concluding, the ALJ discounted the claimed severity of Metters' impairments and adopted

27   the RFC assessment of Dr. Clark Gable, a consulting physician who examined plaintiff.

28

                                              4

1    Plaintiff contends that the ALJ's adverse credibility determination is not supported by

2    substantial evidence in the record.

3        An ALJ conducts a two-step analysis in assessing subjective testimony.  First, "the

4    claimant 'must produce objective medical evidence of an underlying impairment' or

5    impairments that could reasonably be expected to produce some degree of symptom."

6    Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen v. Chater, 80 F.3d

7    1273, 1281-82 (9th Cir. 1996)).  If the claimant does so, and there is no affirmative evidence of

8    malingering, then the ALJ can reject the claimant's testimony as to the severity of the

9    symptoms "'only by offering specific, clear and convincing reasons for doing so.'"  Id. (quoting

10   Smolen, 80 F.3d at 1283-84).  That is, the ALJ must "make 'a credibility determination with

11   findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

12   discredit claimant's testimony.'"  Id. (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir.

13   2002)).  In weighing a claimant's credibility, an ALJ may consider several factors, including (1)

14   ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure

15   to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

16   activities.  Id.  "Although lack of medical evidence cannot form the sole basis for discounting

17   pain testimony, it is a factor that the ALJ can consider in his credibility analysis."  Burch v.

18   Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  "If the ALJ's finding is supported by substantial

19   evidence, the court 'may not engage in second-guessing.'"  Tommasetti, 533 F.3d at 1039

20   (quoting Thomas, 278 F.3d at 959).

21       Here, the ALJ noted that plaintiff complained of weakness and fatigue from

22   medications; swelling in the right leg and ankle with sores when he stands or walks for long

23   periods of time; shortness of breath; an upset and painful stomach; chronic diarrhea and

24   constipation; and that his hands constantly shake and he cannot hold on to things.[2]  (AR 15).

25   The ALJ further found that Metters' medically determinable impairments could reasonably be

26   expected to cause the alleged symptoms.  (Id.).  Nevertheless, he discounted the "intensity,

27

28       [2]    The ALJ also noted plaintiff's complaints of a "bad rash."  However, plaintiff
         says that the rash is not alleged to be a disabling impairment.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   persistence, and limiting effects" of plaintiff's allegations to the extent they are inconsistent

2   with an RFC for the full range of medium work.  (AR 15-16).

3        In reaching that conclusion, the ALJ credited Dr. Gable's opinion and gave it

4   considerable weight.  After examining Metters, Dr. Gable found no problems with fine finger

5   and hand movements and concluded that plaintiff is capable of sitting up to 6 hours a day with

6   usual breaks; standing and walking up to 6 hours; and lifting, pushing, or pulling at least 25

7   pounds frequently and 50 pounds occasionally.  (AR 376).  Plaintiff contends that Dr. Gable's

8   opinion is defective in two respects.  First, Metters points out that Dr. Gable specifically noted

9   the presence of "some stasis pigmentation, probably from venous insufficiency, and the right

10  ankle is slightly bigger than the left, probably from his broken ankle."  (AR 375).  Plaintiff

11  argues that this finding is inconsistent with Dr. Gable's ultimate conclusion as to his RFC.

12  Second, plaintiff says that Dr. Gable did not mention any of the non-exertional requirements of

13  medium work.  See 20 C.F.R. § 416.969a.

14       However, as noted by the ALJ, at the time of the examination, Metters did not identify

15  any of the problems he was experiencing.  (AR 15, 373).  Moreover, the ALJ correctly noted

16  that:

17       Dr. Gable's examination did not show signs of either sensory or motor
         weakness.  Instead, it showed that the claimant could move all extremities
18       in full range of motion and positions, complete a full squat, flex both knees
         maximally without crepitation, and that he had no respiratory distress or
19       other objective signs of problems including of the claimant's abdomen.
         (Exh. 7F, p. 3).
20

21  (AR 15).  As for plaintiff's leg and ankle, the ALJ observed that while Dr. Gable noted stasis

22  pigmentation and that the right ankle is larger than the left, he also found "no significant

23  edema."  (AR 15, 375).

24       Moreover, the ALJ also reviewed plaintiff's longitudinal medical record and found that

25  the severity of plaintiff's symptoms were also not borne out by those documents:

26       Dr. Gable's findings are consistent with the claimant's longitudinal medical
         record which also indicates that the claimant does not have the intensity,
27       persistence, or limiting effects of symptoms that he alleges.  Further with
         respect to the claimant's abdominal condition, the examination of his
28       abdomen in mid-2007 and into 2008 show that his abdomen is soft and not
         distended. (Exhs. 3F, p. 3; 18F p. 2).  Moreover, there is no medical

evidence of any ongoing problems associated with diarrhea and constipation. (Exh. 6F, p. 3). In addition, the claimant's treating physicians noted on June 11, 2007 that the claimant had no abdominal pain and that he was eating everything with tolerance. (Exh. 10F, p. 4). Except for the claimant's surgical treatment in connection with his bowel obstruction, his record shows normal examinations which evidence no edema or swelling of his lower extremity or hip problems, no ongoing fatigue or shortness of breath, or difficulty with ambulation or other physical exertional activities. (Exhs. 3F, 3; 18F, 2, 8).

Moreover there is no indication in the medical record that the claimant has had side effects from his medications that significantly impair his activities. (Exhs. 4F; 5F, 6F, 18F). In fact, on July 31, 2008, the claimant reported to his physician that he feels fine. (Exh. 18F, p. 1).

(AR 16).

Based upon review of the record as a whole, this court finds that the ALJ's decision to discount the severity of plaintiff's symptoms is rational and supported by substantial evidence. Accordingly, as to this issue, plaintiff's motion is denied and defendant's motion is granted.

B.    Plaintiff's Past Relevant Work

The ALJ concluded that Metters is capable of performing past relevant work as a warehouse worker and that the job did not require activities precluded by his RFC. Metters contends that the ALJ's conclusion is not supported by substantial evidence because he did not resolve a conflict between the testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT). Relatedly, Metters contends that the ALJ's conclusion cannot stand because the ALJ failed to fully develop the record as to whether his warehouse job was medium or heavy work.

At step 4 of the five-step sequential analysis, the claimant has the burden of showing that he can no longer perform his past relevant work, but the ALJ must still make the requisite factual findings to support his conclusion. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." Id. at 844-45 (citing 20 C.F.R. § 404.1520(e) and § 416.920(e)).

The Commissioner properly may deny benefits when the claimant can perform past relevant work either as actually performed or as generally performed. Id. at 845. "Social

**United States District Court**
For the Northern District of California

1    Security Regulations name two sources of information that may be used to define a claimant's

2    past relevant work as actually performed:   a properly completed vocational report, SSR 82-61,

3    and the claimant's own testimony, SSR 82-41." Id.  The "best source for how a job is generally

4    performed is usually the Dictionary of Occupational Titles." Id. at 846.

5         In a written vocational report (Form SSA-3369) filled out by his sister, plaintiff

6    indicated that for his warehouse job, he filled orders, drove a forklift, and lifted and carried

7    toilets 10 feet to a forklift for most of the day.  That statement also says that the heaviest weight

8    he lifted was 50 pounds and that he frequently lifted 25 pounds.  (AR 120).  During the

9    administrative hearing, however, Metters testified that the heaviest weight he lifted in his

10   warehouse job was 100 pounds.  (AR 39).  The VE testified that plaintiff's warehouse job was

11   medium work.[3]  (AR 52).  Metters' attorney then cross-examined the VE, and the following

12   exchange ensued:

13        Q:    You've heard his testimony about the objects that he lifted and stuff?

14        A:    Yes.

15        Q:    So as performed would that still be medium or would that be a higher exertional
                level?

16
17        A:    Well, he—there are two, there are material handlers and warehouse workers but
                I—in his description he said the heaviest weight he lifted was 100 and, and
                frequently he lifted less [than] that and he used a forklift.

18
19        Q:    What's, what's the, the amount of weight that's lifted occasionally, the heaviest
                at the medium exertional level?

20        A:    One hundred.

21        ALJ:  I'm not—I really don't think it's going to make any difference to tell you the
                truth whether it's medium or heavy.  I mean he's not going—I agree he can't do
22              that work anymore.

23        VE:   Yeah.

24        ALJ:  There's no way he can do that work with two knees and an ankle so—and since
                it's unskilled I don't see any point—you can ask anything else but, you know, I
25              don't see that it makes any difference whether it's medium or heavy.

26

27   _____

28        [3]    Although the VE initially stated that the warehouse work was unskilled, she
     later testified that the job could be classified as semi-skilled work if it involved forklift
     driving.  (AR 54).

Q:    Okay.  And, Ms. [McQuary], it looks like you were, were nodding your head in agreement, is that—I will turn this back over to you.

A:    Oh, I mean I was just—

Q:    Could, could he—

A:    —I was just saying, well, that's what the Judge is saying, I mean—

Q:    Okay.

A:    —it doesn't matter whether it's heavy, heavy or medium.

Q:    Okay.  And then if, if it involves forklift driving is it still an SVP of two?

A:    Well, you're, you're right, an SVP of three is a forklift driver, forklift driver.  So it may be slightly higher, semiskilled.

ATTY: That's all I have, Your Honor, just wanted to clear that up.

VE:    But even a forklift driver is medium.

(AR 53-54).

By the time he issued his decision, however, the ALJ changed his mind and concluded that the warehouse job, as it was actually performed, was medium exertional work that plaintiff was capable of doing:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform his past work.  The claimant's exertional levels for his job as warehouse worker do not exceed, and in some instances, are less than those which he has stated were actually performed. (Exh. 2E, p. 3).  Vocational expert, Darlene Mcquary testified that the job of warehouse worker under the Dictionary of Titles is no. 922.687.058 with a specific vocational preparation (SVP) of 2-3 depending on whether forklift driver is included in that job description.  (Testimony of Darlene Mcquary at Hearing, July 29, 2009).  As such, she also testified that the job required a capacity to perform medium level of work as actually performed by the claimant.

(AR 16-17).

Plaintiff argues that the ALJ erred because he failed to resolve a conflict between the VE's testimony and the DOT as to the exertional requirements of medium work.  Specifically, plaintiff says that the VE's testimony that the heaviest weight lifted in medium work is 100 pounds is at odds with the DOT.  Indeed, according to the DOT's exertional classifications, which are incorporated in the Commissioner's regulations, "[m]edium work involves lifting no

United States District Court

For the Northern District of California

1   more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25

2   pounds."  20 C.F.R. §416.967(c).

3          Citing Brewer v. Chater, 103 F.3d 1384, 1389 (7th Cir. 1997), rev'd on other grounds in

4   Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999), the Commissioner contends that the ALJ was

5   entitled to credit plaintiff's written vocational report stating that the heaviest weight he lifted

6   was 50 pounds.  Additionally, defendant argues that the ALJ did not actually rely on the VE's

7   testimony that medium level work requires lifting up to 100 pounds.  However, a claimant's

8   testimony about past relevant work is "highly probative" evidence.  Matthews v. Shalala, 10

9   F.3d 678, 681 (9th Cir.1993).  And, it is not clear why the ALJ evidently found plaintiff's prior

10  written statement to be more reliable than his conflicting testimony.  In any event, the ALJ did

11  rely on the VE's classification of plaintiff's warehouse job as medium work.  That classification

12  evidently was based, at least in part, on the VE's understanding that medium work generally

13  requires lifting up to 100 pounds.  An ALJ may not rely on a VE's testimony about the

14  requirements of a particular job without first inquiring whether the testimony conflicts with the

15  DOT and whether there is a reasonable explanation for any deviation.  Massachi v. Astrue, 486

16  F.3d 1149, 1152-53 (9th Cir. 2007).  Here, the ALJ made no such inquiry, and plaintiff's

17  attempts to probe the VE about that discrepancy were cut short.  Although defendant maintains

18  that the ALJ said that plaintiff's counsel could ask the VE "anything," the transcript of the

19  proceedings shows that the ALJ said that plaintiff could ask the VE about "anything

20  else"—which this court interprets as anything other than the issue whether the warehouse job

21  properly is classified as medium or heavy work.  While this court finds no basis for plaintiff's

22  suggestion that the ALJ cut short the VE's cross-examination in an attempt to be "deceptive"

23  (Opp. at 7), it finds the current record incomplete—particularly when the ALJ changed his mind

24  on the very issue that was being explored on that cross-examination.  See Tonapetyan v. Halter,

25  242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent

26  duty to fully and fairly develop the record and to assure that the claimant's interests are

27  considered.") (citations omitted).

28

United States District Court

For the Northern District of California

1    Defendant nevertheless contends that the error is harmless because, at step five of the

2    sequential analysis, the ALJ probably would have found that plaintiff is not disabled anyway.

3    Suffice to say that the court "cannot affirm the decision of an agency on a ground that the

4    agency did not invoke in making its decision."  <u>Pinto</u>, 249 F.3d at 847.

5    On this issue, plaintiff's summary judgment motion is granted and defendant's summary

6    judgment motion is denied.

7                                    ORDER

8    Based on the foregoing, IT IS ORDERED THAT:

9    1.    Plaintiff's motion for summary judgment is GRANTED IN PART AND

10   DENIED IN PART;

11   2.    Defendant's cross-motion for summary judgment is GRANTED IN PART AND

12   DENIED IN PART;

13   3.    The matter is REMANDED for further proceedings consistent with this opinion;

14   and

15   4.    The clerk shall close the file.

16   Dated: September 28, 2012

17   _____

18   HOWARD R. LLOYD
     UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

11

1   5:10-cv-02532-HRL Notice has been electronically mailed to:

2   Daniel Paul Talbert     Daniel.Talbert@ssa.gov

3   Tom F. Weathered     tweathered@covad.net

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California